194 So. 818

**INDEMNITY INS. CO. v. LUQUIRE FUNERAL HOMES INS. CO.**

**6 Div. 485.**

Supreme Court of Alabama.

March 7, 1940.

Rehearing Denied April 4, 1940.

Lange, Simpson, Brantley & Robinson, of Birmingham, for appellant.

Wm. S. Pritchard, David R. Solomon, Thos. E. Skinner, and Winston B. McCall, all of Birmingham, for appellee.

FOSTER, Justice.

The question in this case is whether appellee, suing appellant on a liability insurance policy, had violated the "cooperation" clause in the policy, because one of its agents, who was responsible for personal injuries to another, made conflicting statements to appellant as such insurance carrier, whereupon appellant withdrew from the defense of the suit against appellee for such injuries, and though otherwise carefully defended by appellee, a judgment was finally rendered against appellee, and paid by it.

The cooperation clause is in the usual form obligating the assured "at all times (to) render to the company all cooperation and assistance in his power and, whenever requested, shall aid in securing information and evidence and the attendance of witnesses and in presenting appeals."

On this question the court charged the jury that if the assured makes a false statement knowingly with the intention to mislead the insurance company, and it is misled in the matter of handling the claim, that is a breach of the clause to which we have referred and the insurer would be no longer liable on the policy. The court stressed the necessity of bad faith in making the false statement.

The statements alleged to be false were made to the insurer by one Parker who was operating the car which caused the personal injuries, who was alone in it, and were made while he was the agent of assured, and from his personal knowledge of the occurrence, and who alone of those connected with assured had such knowledge. The court charged the jury that if he was not then acting in his capacity as an agent of assured, his statement would not be chargeable to assured, though it was knowingly false when made.

The primary question of moment presented by the refused charges, and other assignments of error, and argument of counsel, is whether the fact that Parker, when he made the false statements was acting as the authorized representative and agent of appellee, actual or implied, so as to bind appellee by the consequences of making a materially false statement, knowing it to be so at the time.

There was evidence tending to show that the time when he made the statements he was assistant general manager of appellee, in charge of field salesmen. That on the day of the accident, Hughes notified the insurer's agent as was his duty. He was office manager and accountant as some of the evidence indicates, and had charge of placing this kind of insurance, and assisted them in getting information as to an accident when requested by them, and no one else had anything to do with that aspect of the business: that soon after Hughes had notified the insurer, and on September 16, 1935, Mr. Moore, agent of insurer, was in their building on other business, and Parker asked him to come in his office, and there made a statement to him as to the accident, which was in writing and signed, but Hughes had no part in it, neither did anyone else. He was not told by Hughes nor anyone else to make the statement, and there was no request from insurer that one be made. In that statement in writing, he

said that he was not on business of the assured, and it was in no way responsible for the accident. Mr. Moore, who took this statement for the insurer, testified that Parker also stated that at the time of the accident he was on his way to his father's house at Norwood; also that Parker dictated the written statement, and that he, Moore, typed it in the office of assured on the stationery of assured.

The evidence also shows that there was soon afterwards a trial of Parker in police court, in which he testified to the same substantial effect. .Later, in November 1935, in a suit by the owner of the car in the intermediate civil court, there was some intimation that Parker might make a different statement, and he was not used as a witness. In October 1935, he made a statement in writing to the insurance adjuster that he was on his way from his home to work when the accident occurred; that he had not done anything that morning for the company, and was not to do anything for it until he got to the office, but was not on the company's business when the accident happened, and in it he said nothing to the effect that he had been instructed by the president of assured company to pick him up and take him to Montgomery, and that he was on that mission when the accident occurred.

When it became necessary to answer the interrogatories filed by plaintiff to assured as defendant in the damage suit, who had up to that time been represented by counsel employed by insurer, Parker went to the office of counsel, on about May 10, 1936, and in answer to interrogatory No. 31, he stated that he was operating the car for the purpose of meeting an engagement with Mr. Russell Luquire: said engagement being to take him to Montgomery on company business. He was president of the company. Whereupon, counsel for insurer, who had been conducting the defense for assured, notified assured that on account of a failure to comply with certain provisions of the policy the insurer did then and there withdraw from the defense of the case. Assured then employed counsel to continue in the defense of it, and it was tried in October 1936. Parker continued in the employ of assured until October 1936. On the trial plaintiff amended the complaint by striking Parker as a defendant, and used him as a witness, when he testified as indicated by the answers to interrogatories, to which we have referred.

Plaintiff had a verdict and judgment, and it was affirmed on appeal. Luquire Funeral Homes Ins. Co. v. Turner, 235 Ala. 305, 178 So. 536.

There is no omnibus clause whereby Parker was personally insured against liability, and he individually owed no duty under the policy to cooperate.

The only question is whether the company, his employer and the only one insured by the policy, rendered due cooperation. Being a corporation, it could only act by its officers and agents. Was Parker acting as such with due authority to bind the corporation when he made the allegedly false statements to insurer? The fact that he was assistant general manager of assured at the time of the accident and at the time he made the allegedly false statements to insurer's agent does not carry the necessary consequence that in making such statements he was acting as agent of the assured. If his authority as agent, either specially or generally, included a duty to aid the insurer in the defense, he could not shake off such authority and make the statements only as a witness to the transaction. The statements were made as they were because he was present and participated in the occurrence and knew personally the facts which he was then reporting. If they were also made by him because it was his duty as the agent of the assured, or specially commissioned by assured to furnish information to the insurer, his statement was within the policy provisions requiring cooperation by the assured. The court left that question to the jury. One aspect of the evidence was that Parker was not acting within his authority as agent in making such statements, but only as a person familiar with the facts, and on his own initiative to enable the insurer to have information as to what they were, as if given by one not connected with the company, and that his statement was not the act of the company furnishing the information.

The evidence tended to show that Mr. Hughes was solely authorized by assured to represent it in cooperating with insurer in adjusting the claim and defending the suit. But there were some circumstances developed on the trial which were probably sufficient to carry to the jury the question of whether Parker also had implied authority in that respect.

Appellant complains in argument that the court should have charged the jury that because Parker was assistant general manager in charge of salesmen in the field, that his duty and authority in respect to such matter should be implied as a matter of law. Such is the import of the refused charges assigned as error.

We have had occasion to observe that the authority of a general manager of a specified branch of the business of the employer is presumed to extend to that branch only; and that an assistant manager carries the idea of subordination to the manager. Rawleigh v. Phillips, 232 Ala. 124, 167 So. 271. But it may be that though one is called an "assistant general manager," he may have *general management* over a branch, subject to the general supervision of the general manager of the entire business. When so, his authority would be coextensive with and presumably limited to the management of that branch under his special control. And it may be that the placing of insurance and the adjustment of claims and defense of suits and aid to the insurance carrier constitute a branch of the business in charge of another; and not within the province of the assistant manager of a different branch, though the claim was an incident to it. The exact nature of the status of their duties and authority in that connection is dependent upon the facts and evidence, and it is not one of law unless such facts are undisputed, and only one reasonable inference may be drawn.

But there is a tendency of the evidence to the effect that the duties and authority of Parker, the assistant manager of a certain branch of the business, do not include the adjustment of claims and defense of suits and cooperation with the insurance carrier. When so, we cannot say as a legal conclusion that such duties are placed upon him because he is an assistant manager in charge of a certain defined branch of the business not including that feature of it. The act of Parker in making the statement could, consistently with the evidence, be attributed to his status as the instrumentality creating the claim, and his personal interest in respect to a liability thereby created, and his personal knowl-edge of the transaction, and not to the duty of his employer to make report of the facts when requested.

If this view of the legal status is correct, there was no reversible error in refusing charges A and B, and in leaving the question to the jury.

We refrain from discussing or considering the question of whether the allegedly false statement made by Parker would be such as to constitute a failure to cooperate under the terms of the policy. See on that subject 72 A.L.R. 1463; 98 A.L.R. 1474; Rockmiss v. New Jersey M'f'g Ass'n Ins. Co., 112 N.J.L. 136, 169 A. 663; Ocean Acc't. & Guar. Corp. v. Lucas, 6 Cir., 74 F.2d 115, 98 A.L.R. 1461.

We are not impressed that any assignment manifests reversible error in the light of the views we have expressed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.